## C. C. WYMAN & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10676.   Promulgated September 30, 1927.

1. Good will acquired by petitioner in exchange for $50,000 par value of capital stock had a cash value of $25,000.

2. The petitioner transferred five memberships in the Minneapolis and Duluth Chambers of Commerce, and acquired from the transferee five like memberships in payment therefor. *Held*, the transaction was an exchange of property for property of a like kind and use from which no gain or loss was derived.

*J. H. Kirby, Esq.*, and *P. J. Coffey, Esq.*, for the petitioner.
*Joseph B. Harlacher, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits tax for the fiscal years ending in 1921 and 1922, in the respective amounts of $4,800.86 and $2,473.42. At the hearing all allegations of error were waived except the following:

(1) That the Commissioner erroneously held that for the fiscal years ending in 1921 and 1922 the petitioner is not entitled to include as a part of its invested capital good will in the amount of $25,000;

(2) That the Commissioner erroneously held that for the fiscal year ending in 1922 the petitioner is not entitled to the deduction of any loss resulting from the sale of certain memberships in the Minneapolis and Duluth Chambers of Commerce.

### FINDINGS OF FACT.

The petitioner is a Minnesota corporation, engaged in the grain commission business. Its principal business is receiving and selling cash grain for independent grain shippers of the Northwest, largely farmers' elevator companies, which it finances to a great extent. The business was established in 1883 as a partnership, under the name of Martin & Wyman. On April 30, 1903, Wyman took over the business and carried it on individually under the name of C. C. Wyman & Co. during the years 1903, 1904, and 1905. In 1905, he, together with others, incorporated the petitioner with a capital stock of $100,000, $25,000 of which was issued for tangible assets, $25,000 additional for cash, and $50,000 for the good will of the predecessor business. Wyman had traveled over the country and established the business and he did all the exchange business. While the business was conducted by him as an individual and after the organization of the corporation, one or more traveling salesmen were employed to purchase the grain and to keep on friendly relations with producers. After the business was incorporated Wyman made it a practice of covering the territory once a year to hold his clientele. The income of the business was from commissions, interest upon money advanced to farmers, and from profits on the purchase and sale of grain. The principal reason for the incorporation of the business was to enable employees to acquire a stock interest therein. The profits for the fiscal years ended April 30, 1903 to 1908, inclusive, after the payment of a salary of $3,000 per year to Wyman, were as follow:

| | | | |
|---|---|---|---|
| 1903 | $10, 623. 89 | 1906 | $21, 323. 19 |
| 1904 | 11, 979. 35 | 1907 | 12, 847. 40 |
| 1905 | 18, 299. 50 | 1908 | 34, 075. 07 |

The earnings for the years 1903, 1904, and 1905 were on an invested capital which at no time exceeded $25,000.

The cash value at the date paid in for $50,000 par value of capital stock was $25,000.

When the corporation was organized, Wyman turned over to the corporation two memberships in the Minneapolis Chamber of Commerce and one membership in the Minneapolis Clearing House. These were turned in at their then market value of $4,450 for each of the memberships in the Chamber of Commerce and $300 for that in the Minneapolis Clearing House.

It was the practice of the petitioner to value its memberships in the Minneapolis Chamber of Commerce and in the Duluth Chamber of Commerce at the end of each year at their then market value.

Subsequent to the organization of the corporation it acquired an additional membership in the Minneapolis Chamber of Commerce and two memberships in the Duluth Chamber of Commerce. The value of these memberships at March 1, 1913, was $3,600 each. The value had declined in 1921 and the petitioner, desiring to make note of that fact in its balance sheet for the purpose of establishing its credit with the banks and in order to take a deduction in its income-tax return, transferred the five memberships in December, 1921, to the Hoover Grain Co. at the then market price, and on the same date acquired five like memberships from the Hoover Grain Co. at a like price. A certificate and a trading room card are issued with each membership and the transfers of the memberships above indicated were carried out in the usual manner. The transfers were effected on the books of the exchanges. In its income-tax return for the fiscal year ended in 1921 the petitioner claimed the deduction of a loss of $9,000 in respect of the memberships transferred, which deduction was disallowed by the Commissioner.

OPINION.

SMITH: The first point raised by this proceeding is the value of the good will of the sole proprietorship of C. C. Wyman & Co. which was transferred to the petitioner in 1905 in exchange for $50,000 par value of capital stock. The evidence is to the effect that C. C. Wyman had built up a large and lucrative commission grain business with shippers of grain in the Northwest. The business of the partnership of Martin & Wyman had been conducted from 1883 to 1902 on a capital of not to exceed $20,000 or $25,000. The profits of the years 1903, 1904, and 1905 were made on a capital of not to exceed $25,000. Wyman had been successful over a long series of years in retaining his clientele. He testified that some grain producers had been shipping their grain to him to sell for more than 40 years. The profits of the corporation for the years 1906, 1907, and 1908 averaged greater than the profits of the business conducted by Wyman as an individual. The good will of the individual business was paid into the corporation in exchange for shares of stock.

Good will is not necessarily confined to a name. It may as well attach to a particular location where the business is transacted or to a list of customers or to other elements of value in the business as a going concern. *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, 446.

The evidence warrants the conclusion that the good will of the individual business of C. C. Wyman & Co., paid in to the petitioner for $50,000 capital stock, had a cash value at the date paid in of $25,000.

The petitioner claims that it sustained a loss upon the sale of certain memberships in the Chambers of Commerce of Minneapolis and Duluth in 1921. In its original petition it claimed the amount of the loss was $9,000, but this was amended to $2,100.

Section 202(c) of the Revenue Act of 1921 provides as a basis for determining gain or loss:

For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use.

Section 234 of the same Act permits a corporation to deduct from gross income in making its tax return.

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise; * * * No deduction shall be allowed for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities made after the passage of this Act where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, unless such claim is made by a dealer in stock or securities and with respect to a transaction made in the ordinary course of its business. * * *

The petitioner claims that the transaction by which it transferred five memberships in the Minneapolis and Duluth Chambers of Commerce for five like memberships with the Hoover Grain Co. was a sale of such memberships, and that it is entitled to deduct from its gross income the loss which was sustained on the sale of at least two of the memberships. The actual details of the transaction are not in evidence. The evidence shows, however, that the petitioner transferred five memberships to the Hoover Grain Co. and the Hoover Grain Co. transferred on the same day five like memberships to the petitioner. There is no evidence that there was any cash transaction between the parties. We think that it is immaterial that the transfers took place at the then market price of the memberships. The substance of the transaction was an exchange of property for like property within the meaning of section 202(c) of the Revenue Act of 1921, above quoted. No deductible loss resulted to the petitioner from such transaction.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.