SHERMAN THURSBY, Plaintiff, *v.* CHARLES J. KIRBY, JR., Defendant.

Supreme Court, Special Term, New York County, April 2, 1939.

*Dunn, Daly & Bain*, for the plaintiff.

*Powers, Kaplan & Berger*, for the defendant.

MILLER, J. This is a motion by the plaintiff to confirm the report of a referee. The action was for a partnership accounting, and the referee appointed after the interlocutory judgment to take and state the account reported that defendant was indebted to plaintiff in the sum of $1,490. Defendant's main objection to confirmation is based upon the disallowance by the referee of anything for good will.

The partnership was formed on June 6, 1933, as successor of the corporation Charles J. Kirby, Jr., Inc., of which the two parties were equal owners. It was organized and conducted under the firm name of Charles J. Kirby, Jr., Company and was to continue from year to year unless terminated by written notice of not less than six months. Profits and losses were to be divided equally. Each partner agreed to give his whole time and attention to the business of the partnership. Provision was made, in case of termination of the partnership by the death of Kirby, that " any good will attaching to the said firm name shall be treated as a firm asset and the surviving partner shall have the right to continue the use of the name." Good will was not mentioned in other respects nor valued in the books of account. The nature of the business was that of insurance company adjusters.

On April 2, 1937, plaintiff gave defendant notice that he desired to dissolve the partnership. The next day defendant acknowledged receipt of the notice and said that he would be pleased to arrange the essential details at plaintiff's convenience. The dissolution was to take effect as of June 6, 1937. Both parties sent out notices to the trade. Defendant used the stationery of the old firm, announcing the dissolution and telling the trade that he and plaintiff would continue separately in the adjustment business. His temporary office was to be at 111 John street, room 1606, telephone Beek. 3-9129. Assignments for adjustment could be telephoned to him there. He further stated: " I respectfully ask your continued patronage."

Plaintiff also sent announcements of dissolution on a letterhead marked " Sherman Thursby, 41 Maiden Lane, Phone John 4-1829," to which were added in typewriting two new phones, " 4535 and 4536." The letter stated that both parties would continue in the business of adjusting losses; that plaintiff would remain at 41–43 Maiden lane and that members of the staff had elected to remain in plaintiff's service. The staff included John Kirby, a brother of defendant.

The lease to the old quarters which expired on April 30, 1937, was taken by the plaintiff in his own name by a lease dated April 12, 1937, to commence on May 1, 1937, for one year. The new lease thus began more than one month prior to the termination of the partnership. A formal letter in connection with the dissolution was sent to defendant by plaintiff's attorneys on April 16, 1937. Defendant uses this as a basis for the charge that plaintiff secretly obtained a renewal for himself, before notifying the defendant of the dissolution. The letter of that date was not the first notice of dissolution. That, as we have seen, was given on April 2, 1937, and acknowledged in writing by defendant on April third. The charge of bad faith on plaintiff's part in obtaining the renewal in his own name must be discounted. The new lease with the Chase National Bank as landlord and plaintiff as sole tenant began as of May 1, 1937. Plaintiff attempted unsuccessfully to obtain a short lease for the partnership from May 1 to June 6, 1937.

The net result of the events of April was that plaintiff had a lease in his own name from May 1, 1937; he had the old staff of employees, the old furniture and equipment and the old files of the business. He apparently ran the business from May 1 to June 6, 1937, which was the unexpired partnership term, for his own benefit. He obtained the benefits of the partnership organization for that period in familiar quarters. For this he has been penalized by the referee as follows: He has been charged with the full expenses for the period, while the defendant has been credited with half the profits, and the referee has also recommended that he bear the sole charge of the expenses of the reference including the minutes. He has also been charged with the full book value of the furniture.

Defendant complains that the referee erred in failing to allow any valuation on the good will and to credit defendant with his proportionate share of it. The referee held that " upon the dissolution of the firm without the firm name and a location which had no particular significance and with the partners competing for business, the firm's good will, capable of computation, ceased." This view defendant challenges.

The business of insurance adjustment as operated by the partnership was a personal one depending upon the ability and the service that could be rendered. The meaning of good will in a business of a personal character is thus stated in *Matter of Caldwell* (107 Misc. 316, 318; affd., 195 App. Div. 890): " Judge Story's comprehensive definition in his work on Partnership (§ 99) might be considered to include as an element of good will any advantage accruing to the new occupier of premises that had been used by a deceased man of considerable reputation. Judge VANN's definition (*People ex rel.*

*Johnson Co.* v. *Roberts,* 159 N. Y. 83) would seem to require the combination of two elements — ' continuing an established business in its old place, and of continuing it under the old style or name.' The second element is lacking in the matter under consideration, for the business was conducted under a new name."

In the case at bar the second element is also lacking. Defendant gained any possible advantage that might have appertained to the old firm name, which was virtually his own name. Plaintiff did gain the benefit of continuing the business in the old place. An advantage of this character in the ordinary case legally gives a purchaser of a business the exclusive right to solicit old customers, as the essence of the good will of the business. (*Von Bremen* v. *MacMonnies,* 200 N. Y. 41, at p. 51.) Here, however, both parties were free to solicit customers and obtain the business individually. With competition continuing, good will in the technical sense of the word ceased. The fractional advantage of retaining only the old stand and the custody of old files, to which defendant also had access, is not good will in the legal sense. The valuation of this advantage is elusive and uncertain, and it is questionable whether defendant is entitled to any benefit from it, even if a value could be placed upon it. It is true that an effort might have been made to sell the business as a whole for the benefit of the partnership, and thus obtain the real advantage of any good will the business might have possessed. This could not have been done without the result of virtually barring the two partners from continuing business relations with the old customers. This was not within the intent of the parties. Even if one partner had bid against the other for the entire business, the successful bidder could have prevented the other from doing business with the old customers. Only with this limitation could the good will have been evaluated.

The theoretical valuation of good will, when there has been no sale of a business on the market, is found in the valuation for taxation purposes of the interest of a deceased partner. The question whether the result obtained by the referee has been fair to the defendant may be checked with the result which might have been obtained upon an estate valuation. The average profits for the three preceding years, without any allowance for personal drawings, were $8,582.50, or $4,291.25 for each partner. In this business the members were required to give their whole working time to the business. The amount of the profit was virtually their salary. The good will of a business in estate valuations is the excess profit above the reasonable salaries of the partners, after deduction of six per cent interest on invested capital. (*Von Au* v. *Magenheimer,* 126 App. Div. 257; affd., 196 N. Y. 510; *Matter of Rosenberg,*

114 N. Y. Supp. 726.) This excess profit is found by taking the annual average for the past three years, and this average is multiplied by what is known as one or more years' purchase depending upon the character of the particular business. The calculation here shows no excess profits after allowance of combined partners' salaries of $8,500. It thus appears that even on the basis of estate valuations, there would be no valuation for good will. Where, as here, each partner retains the unrestricted right of competition, the inference is even more decisive against the existence of good will.

The report of the referee is confirmed. He will submit an affidavit of services and disbursements, on notice to plaintiff. Settle order of confirmation, providing for payment by plaintiff of the referee's fees and stenographer's minutes.