D. K. MacDonald, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Elise C. MacDonald, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket Nos. 905, 906.   Promulgated May 5, 1944.

*H. B. Jones, Esq.*, and *A. R. Kehoe, Esq.*, for the petitioners.
*B. H. Neblett, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: On July 31, 1941, Carter, MacDonald & Co., a corporation, transferred all of its assets to D. K. MacDonald, as trustee, for the purposes of winding up its affairs under voluntary dissolution proceedings. Thereupon, D. K. MacDonald, as trustee, transferred all of the corporation's assets to D. K. MacDonald, individually, in exchange for 500 shares of $100 par value common stock, which constituted the entire capital stock of the corporation and was owned by the marital community composed of D. K. MacDonald and his wife. The determination of the gain or loss as a result of these transactions for income tax purposes is governed by sections 115 (c), 111 (a), (b), (c) and 112 (a) of the Internal Revenue Code.[1]

Petitioners contend that the only assets received by them as a result of the liquidation of the corporation were certain tangible assets which both parties agree had a fair market value of $267,198.87. Petitioners further contend that they assumed liabilities of the corporation, the amount of which exceeded the fair market value of the assets received. The amount of these liabilities was $289,508.73. Petitioners, therefore, contend that the transactions here in question did not result in any taxable gain to them.

Respondent, on the other hand, while conceding that the value of the tangible assets transferred to the petitioners was $267,198.87, has determined that the sum of $99,635.25, which he contends represented

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

   *        *       *       *       *       *       *

  (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock  * * *. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112.

SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

  (a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain  * * *. [Section 113 (b) is not applicable to the instant case.]

  (b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

  (c) RECOGNITION OF GAIN OR LOSS.—In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

  (a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section. [Section 112 is not otherwise applicable to the instant case.]

the fair market value of the "insurance agency accounts and business,"[2] should be added to the sum of $267,198.87, and that, therefore, the transactions here in question resulted in a long term capital gain, constituting taxable income to petitioners.

The correctness of the petitioners' contentions depends on what the phrase "insurance agency accounts and business" includes. The parties stipulated that "this matter is simply reduced to a question of the fair market value of these insurance agency accounts and business." These cases were tried on the theory that the phrase. "insurance agency accounts and business," included the following: (1) Agency agreements which were in existence between the corporation and various insurers on the date of transfer; (2) insurance agreements which were then in existence between the corporation and its customers; and (3) the good will of the corporation. We have found as a fact that the agency agreements in these cases, being terminable at will or upon 30 days notice, had no fair market value. We have further found that the insurance agreements with customers in these cases. as such, had no fair market value. That finding is based upon the facts that these insurance agreements involved special hazards, were not automatically renewable, and depended for renewal to a large extent upon the personal efforts of D. K. MacDonald, and that the corporation had no contracts which obligated any of its customers to take insurance in the future.

Obviously, then, any excess of the fair market value of the assets received by petitioners over the liabilities assumed by them existed, if at all, in the good will of the corporation. There is no specific rule for the determination of the value of good will and each case must be considered and determined in the light of its own particular facts. *Schuh Trading Co.* v. *Commissioner*, 95 Fed. (2d) 404; *Mossman, Yarnelle & Co.*, 9 B. T. A. 45.

"Good Will" is defined in Cyclopedic Law Dictionary (1940 Ed.) as follows:

The benefit which arises from the establishment of particular trades or occupations. The advantage or benefit which is acquired by an establishment, beyond the mere value of the capital, stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluance or punctuality, or from other accidental circumstances or necessities or even from ancient partialities or prejudices. Story, Partn. § 99. * * *

It includes only that estimation and repute which is peculiar to the particular establishment. It is that species of connection in trade which induces customers to deal with a particular firm.

The Supreme Court of the United States quoted Story's definition with approval in the case of *Metropolitan Bank* v. *St. Louis Dispatch*

---

[2] This phrase is used by the Commissioner in the deficiency notices.

*Co.*, 149 U. S. 436, 446, and also stated in that case that good will "is tangible only as an incident, as connected with a going concern or business having locality or name  *  *  *." See also, *In re Brown*, 242 N. Y. 1; 150 N. E. 581; *Thursby* v. *Kirby*, 12 N. Y. S. (2d) 279, 282; 171 Misc. 310; *C. C. Wyman & Co.*, 8 B. T. A. 408.  But "good will does not adhere to a business or profession dependent solely on the personal ability, skill, integrity or other personal characteristics of the owner." 28 C. J., p. 732; 38 C. J. S., p. 952.  It is different from, and is not to be "confused with, 'going value' or 'going concern value of a business." 38 C. J. S., p. 949.  It is not good will if it depends merely upon personal friendship between the seller and his customer. Cf. *Strong Publishing Co.* v. *Commissioner*, 56 Fed. (2d) 550.  In *Mayme C. Sommers, Administratrix*, 22 B. T. A. 1241, 1244, this Court quoted with approval the following language from the case of *Otto Braunwarth*, 22 B. T. A. 1008:

> It may be conceded that the petitioner had built up a considerable clientele and business acquaintanceship, and that this clientele followed him to a large extent, during his various business enterprises.  But this personal following does not constitute good will within the generally accepted meaning of the term.

To the same effect is *Wickes Boiler Co.*, 15 B. T. A. 1118, 1122, wherein this Court stated that "the ability, will, experience, or other qualifications of individuals do not constitute good will as an item of property." See also, *Noyes-Buick Co.* v. *Nichols* (U. S. Dist. Ct., Mass.), 14 Fed (2d) 548.

The facts in the instant cases established that any value which this business may have had on July 31, 1941, in addition to its tangible assets, was due to the personal ability, business acquaintanceship, and other individualistic qualities of D. K. MacDonald.  As one witness put it, "Mr. MacDonald was the Company."  The policy of the corporation was decided by D. K. MacDonald and all employees worked under his direction and supervision.  There existed no contract between the corporation and any of its employees, including D. K. MacDonald, with respect to future services.  Neither the name of the corporation, its location, its agency agreements, nor its existing policies with customers had any value.  If the law prevents the recognition of the personal ability and personality of D. K. MacDonald as an element of this corporation's good will for income tax purposes, then petitioners did not receive any good will as a result of their acquisition of this corporation's assets.

We find no authority which holds that an individual's personal ability is part of the assets of a corporation by which he is employed where, as in the instant cases, the corporation does not have a right by contract or otherwise to the future services of that individual.  The contrary seems to be indicated by such cases as *Cox* v. *Helvering*, 71

Fed. (2d) 987; *Salvage* v. *Commissioner*, 76 Fed. (2d) 112; affd., 297 U. S. 106; and *Beals' Estate* v. *Commissioner*, 82 Fed. (2d) 268, affirming 31 B. T. A. 966.

Nothing in this opinion is inconsistent with the authorities cited by respondent to show that good will is an intangible asset having value under certain circumstances or that a list of customers may, under particular conditions, also possess value. Neither those circumstances nor those conditions are present in the instant cases. The valuation placed upon its capital stock by the corporation ($200,000) in connection with its 1941 capital stock tax return and the value placed upon its good will by the corporation ($74,028.55) in the balance sheet which is a part of its 1941 corporation income, declared value excess profits, and defense tax return are not binding. "The admissions made by such * * * entries can be overcome by proof of the true market value * * *." *Bessemer Inv. Co.* v. *Commissioner*, 31 Fed. (2d) 248, 249; *Osborn* v. *United States*, 54 Fed (2d) 824; *George Blodgett Co.* v. *Ham* (U. S. Dist. Ct., Dist. Maine, 1934). We think the balance sheet valuation is overcome by the other evidence herein.

Respondent requests that this Court find as a fact that "It is contrary to the custom in the insurance business for the seller of an insurance agency after making a sale to attempt to take the business away from the buyer, irrespective of whether the seller agreed to stay out of the insurance business for a limited period." The evidence does not support such a finding; it establishes that it is customary for the seller to agree to refrain from competition for a stated period. However, in the absence of such an agreement the Supreme Court of the State of Washington has held, in the case of *Cooper & Co.* v. *Anchor Securities Co.* (Wash., 1941), 113 Pac. (2d) 845, 850, that:

* * * the vendor is at liberty to set up a similar business in the same locality and carry it on in his own name. * * * However, the sale of good will of a business carries with it, even in the absence of a restrictive covenant, the implied obligation that the seller will not solicit his old customers or do any act that would interfere with the vendee's use and enjoyment of that which he has purchased.

Under these circumstances, the value of the good will of the corporation to a purchaser would not be the same as if the sale had included such an agreement. It is difficult to see why a willing buyer would pay more for this corporation than the value of its tangible assets, where D. K. MacDonald was "at liberty to set up a similar business in the same locality and carry it on in his own name." See *Estate of Leopold Kaffie*, 44 B. T. A. 843. The presence or absence of an agreement not to compete does not create good will; its only effect would be possibly to enhance its value if it was already in existence.

We have pointed out above that the record in the instant cases establishes that the usual manner of buying and selling an insurance agency calls for a contract by which the person primarily responsible for the seller's business agrees either to work for the purchaser or to refrain from competition for a stated period. Consideration is ordinarily based upon a percentage of the customers received by the purchaser from the renewal of expiring policies of the seller's old customers over a stated period of time. Thus, even if we assume that the sale of the corporation's assets included an agreement by D. K. MacDonald not to compete with the purchaser for a stated period of time, the full market value of a corporation's assets including its good will, if any, would under the evidence have to be measured by the value of the purchaser's promise to pay the seller a certain percentage of the commissions received from renewal business done with the seller's old customers over a period of years. The Court in the case of *Cassatt* v. *Commissioner* (C. C. A., 3d Cir., 1943), 137 Fed. (2d) 745, in affirming the opinion of this Court reported in 47 B. T. A. 400, held that such a promise did not have an ascertainable market value. At page 748 of its opinion the Circuit Court made the following significant statement:

> * * * It is true that good will may be the subject of exchange. Here, however, Cassatt and Company [the seller] did not undertake to transfer its good will to Pierce [the purchaser] in exchange for property of an ascertainable market value. On the contrary the transfer was made in consideration of Pierce's promise to share with Cassatt and Company for six years in the future any commissions which it might earn during that period from business with Cassatt customers. The receipt of such commissions was wholly contingent upon Pierce's remaining in business and obtaining business from the former Cassatt customers, neither of which it was under any obligation to do. It is settled that such a promise to make payments in the future "wholly contingent upon facts and circumstances not possible to foretell with anything like fair certainty" has no ascertainable fair market value. *Burnet* v. *Logan*, 283 U. S. 404, 413, 51 S. Ct. 550, 552, 75 L. Ed. 1143. We agree with Judge Learned Hand's statement in *Bedell* v. *Commissioner of Internal Revenue*, 30 F. (2d) 622, 624 (C C A 2, 1929) that "It is absurd to speak of a promise to pay a sum in the future as having a 'Market value,' fair or unfair. Such rights are sold, if at all, only by seeking out a purchaser and higgling with him on the basis of the particular transaction. Even if we could treat the case as an exchange of property, the profit would be realized only when the promise was performed."

Any attempt to establish the fair market value of good will under such circumstances by discounting anticipated commissions would be open to the same objection. The Commissioner seeks to surmount this objection by implying a logical relationship, if not an identity, between past commissions earned and future commissions to be earned. The relationship does not exist. It does not follow that, because the seller earned $100,000 in gross commissions for each of the past three years, the purchaser, either with or without an agreement on the part

of the seller and the seller's employees not to compete, will earn $100,-000 in gross commissions for each of the next three years.

Respondent cites *National Weeklies, Inc.* v. *Commissioner* (C. C. A. 8th Cir.), 137 Fed. (2d) 39, suggesting that the opinion evidence offered by the petitioners was of "so inherently weak and improbable a nature that it is not legally required to be credited." We can not agree. Insurance agencies are not bought and sold like stocks on an exchange. Petitioner offered as opinion evidence the testimony of men with considerable experience in the insurance brokerage business. Respondent's opinion evidence was of the same general nature.

Applying the above authority, the evidence in the instant cases establishes that by the corporate liquidation there was not transferred to petitioners any good will within the meaning of that term as it has been defined by this Court and that the agency accounts and business had no fair market value. We conclude, therefore, that the Commissioner's determination is erroneous to the extent that it added the sum of $99,635.25 to the value of the assets transferred to D. K. MacDonald.

*Decisions will be entered under Rule 50.*