Richard A. Hopping v. Commissioner. W. Frank Hopping v. Commissioner. Bruce S. Hopping v. Commissioner.
Hopping v. Commissioner
Docket Nos. 7778, 11931, 11932.
United States Tax Court
1947 Tax Ct. Memo LEXIS 181; 6 T.C.M. (CCH) 668; T.C.M. (RIA) 47162; June 20, 1947
Leonard R. Tanner, Jr., Esq., for the petitioner. Albert H. Monacelli, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in income tax of the respective petitioners for the taxable year ended December 31, 1941, in the following amounts: Richard A. Hopping, Docket No. 7778
$4,193.19
W. Frank Hopping, Docket No. 11931
911.54
Bruce S. Hopping, Docket No. 11932
4,475.66
The question presented for consideration in each case, is whether, upon liquidation of David Ripley & Sons and W. Frank Hopping, Inc., a corporation, the petitioner, who was a *182 stockholder of the corporation, received taxable income resulting from the distribution of the corporation's good will to its stockholders in such liquidation, and, if so, in what amount. The proceedings have been consolidated for hearing and opinion. Findings of Fact A partial stipulation of facts and an amendment to the stipulation of facts were filed by the parties hereto, and we find the facts to be as stipulated therein. The petitioners herein, Richard A., W. Frank, and Bruce S. Hopping, are individuals residing in the State of New Jersey. The return of petitioner Richard A. Hopping for the period involved herein was filed with the collector of internal revenue for the district of Minnesota. The returns of petitioners W. Frank Hopping and Bruce S. Hopping for the period involved herein were filed with the collector of internal revenue for the fifth district of New Jersey. David Ripley & Sons and W. Frank Hopping, Inc., hereinafter referred to as the corporation, was incorporated on May, 20, 1929, under the laws of New Jersey. The corporation took over the business and some of the assets of the David Ripley & Sons Lumber and Timber Co., hereinafter referred to as the old *183 company, which had been in existence approximately 100 years. Upon transferring its assets to the corporation the old company went out of business. W. Frank Hopping, who became affiliated with the corporation at the time of its incorporation, had been an officer of another lumber company at Elizabeth, New Jersey, for the previous 10 years. The business carried on by the newly-formed corporation was an amalgamation of the assets and business of the old company and the business brought in by W. Frank Hopping. The new concern was owned on a 50-50 basis by the Ripley and Hopping families. At the time the corporation was organized the old company was doing business on Market Street in Newark, New Jersey, adjacent to the Pennsylvania Railroad. The corporation stayed at that location for about one year and then moved to the Port of Newark, New Jersey, about four or five miles away. The business office of the corporation, on South Dock Street, Port of Newark, was located in the middle of a freight yard, surrounded by cattails and meadows, approximately two miles from the nearest highway and inaccessible to public transportation other than automobile. Both rail and water transportation for *184 freight purposes were available at this place. No customers of the corporation ever called at its office. The corporation specialized in the sale of long-leaf yellow pine which comes principally from Texas, Louisiana, Mississippi, and Florida. This wood is used in the building of docks, railroad bridges, trestles, and shipways because it is the strongest lumber available for construction work. The corporation's clientele was limited and the corporation did not cater to the general public. It engaged in both the retail and wholesale lumber business but it did not have many competitors in its particular line. It had a sawmill at its Port of Newark establishment which was used in cutting the lumber and timber purchased by it to required sizes. It does not appear that the corporation had sources of supply available only to it. The officers of the corporation during the years 1935 through 1940 were as follows: William D. Ripley, President William C. Ripley, Vice-President W. Frank Hopping, Secretary and Treasurer. The President worked for the company "as needed"; the other two officers worked full time and were the active managers of the company. William C. Ripley is the son of *185 William D. Ripley. William C. Ripley and W. Frank Hopping were the only employees of the corporation qualified to carry on the specialized activity engaged in by the corporation. A high degree of skill was required in the business of the corporation because different types of construction projects called for lumber having different qualities and the quality and characteristics of long-leaf yellow pine varied according to the area from which it came. In other words, in supplying lumber for a construction project it was necessary for the corporation to determine the particular kind and quality of long-leaf yellow pine required by the project and then obtain such lumber from the particular area where it was grown. Most of the value of the business of the corporation was attributable to the personal qualifications, skill, and ability of William C. Ripley and W. Frank Hopping in procuring and holding customers through personal contacts, diagnosing their respective requirements and satisfying the customers by supplying them with the material best suited to their needs. Some of the customers of the corporation were regarded as being Ripley's clients and others as Hopping's. Other jobs were *186 obtained by reason of low bids, particularly lumber supplied to governmental agencies. The corporation's largest single customer in 1939 and 1940 was The Federal Shipbuilding & Drydock Co. whose account was handled by Ripley, or by Hopping in Ripley's absence. Ripley had sold lumber to this customer from 1922 on, including the period while he was affiliated with the old company. By reason of its long relationship and many dealings with Ripley this customer had confidence in him and would have followed him to another company if he could have continued to give satisfactory service and prices. By special arrangement with The Federal Shipbuilding & Drydock Co. the corporation carried a stock of lumber to fill Federal's particular needs. From the inception of the company until some time in 1939 a "buyers' market" existed in the lumber business. In about 1939 and subsequent thereto the "buyers' market" changed to an abnormal "sellers' market" and through 1939 and subsequent thereto the corporation's business and sales were attributable almost entirely to business concerns temporarily engaged in the manufacture of defense and war materials. During the year 1939 65.09% and during the *187 year 1940 73.51% of the corporation's total sales were made to 14 customers; this business was obtained as a result of the personal efforts of either Ripley or Hopping or as a result of the fact that the company had submitted a low bid. The following is an analysis of the sales to these particular customers: Fiscal Year Ended
Name of Customer
Nov. 30, 1939
Nov. 30, 1940
(a) Bethlehem Steel Corp. Subsidiaries
$ 83,315.41
$102,493.45
(a) Brighton Marine Repair Yard
48,065.97
65,345.28
(a) E. I. Dupont - Grass Ili
4,957.86
8,962.38
(b) Federal Shipbuilding & Drydock
249,052.38
338,486.31
(a) Leahy, Inc.
10,507.54
12,372.58
(b) Morris Basin & Dry Dock
22,725.66
11,303.47
(c) New Jersey State Highway
6,219.51
5,671.26
(c) City of New York
70,743.52
133,174.07
(c) N. Y. N.H. & H.R.R. Co.
12,615.46
(b) Pennsylvania R.R. Co.
33,368.18
69,372.55
(a) Proctor & Gamble Co.
7,354.11
(a) Standard Oil Co. of New Jersey
6,846.69
6,286.03
(a) Tidewater Associated Oil Co.
15,599.51
8,933.23
(c) United States Navy
61,097.20
Sales to above listed customers
$571,371.80
$823,497.81
Total Sales for the Year
$877,826.15
$1,120,180.30
% of Total Sales
65.09%
73.51%
(a) Attributable to W. Frank Hopping
(b) Attributable to William C. Ripley
(c) Lowest bidder
*188 In the taxable years 1935 through 1940 the corporation's net sales were as follows: Year ending
Nov. 30
1935
$ 432,796.02
1936
613,325.60
1937
783,311.72
1938
632,180.81
1939
877,826.15
1940
1,120,180.30
At the end of the taxable years 1935 through 1940 the balance sheets of the corporation show the following earned surplus and undivided profits: Year ending
Nov. 30
1935
$16,879.35
1936
30,827.16
1937
34,143.74
1938
31,230.87
1939
53,393.67
1940
82,115.65
The corporation paid the following salaries to its officers in the years ended November 30, 1935 to 1940, inclusive: 1935
1936
1937
1938
1939
1940
W. Frank Hopping, Sec'y. & Treas
$10,000
$20,000
$22,500
$15,000
$25,000
$15,000
William C. Ripley, Vice-President
10,000
20,000
22,500
15,000
25,000
15,000
William D. Ripley, President
5,000
6,900
6,900
6,900
6,900
11,900
Totals
$25,000
$46,900
$51,900
$36,900
$56,900
$41,900
The average net tangible assets of the corporation during each of the taxable years from its organization in 1929 through 1940, as well as its net income in each of those years were as *189 follows: Taxable Year
Average Net
Net Income
Ending November 30
Tangible Assets
After Taxes
1929 (six months)
$125,523.58
$10,133.80
1930
133,497.38
12,466.81
1931
133,926.75
105.29
1932
115,166.18
Loss 4,100.33
1933
104,230.42
11,464.58
1934
107,132.00
4,931.05
1935
104,554.49
5,743.00
1936
120,260.07
19,389.84
1937
141,635.61
32,903.17
1938
137,551.23
8,311.86
1939
149,562.64
25,239.16
1940
189,363.95
55,264.34
In September 1941 the corporation was dissolved. The value of the tangible assets of the corporation distributed to the common stockholders upon this dissolution amounted to $226,799.45. The tangible assets of the corporation were distributed to the common stockholders in the proportion to the number of common shares which they held. The business was continued as a partnership consisting of the former common stockholders of the corporation. At the date of dissolution the outstanding capital stock of the corporation was held as follows: Name of
Preferred
Common
Stockholders
Stock
Stock
Richard A. Hopping
0
200
Bruce S. Hopping
0
200
W. Frank Hopping
150
50
William D. Ripley
36
300
William C. Ripley
114
145
H. Guilbert Ripley
0
5
Totals
300
900
*190 Each share of the common stock and of the preferred stock had a par value of $100. The cost or other basis of each share of the common stock of the said corporation was $100 and each of the petitioners at the time of the corporation's dissolution had held the common stock for a period longer than six months. Respondent has determined that the corporation had good will valued at $109,384.60 at the time of dissolution. Respondent arrived at this figure by ascertaining the average amount of tangible assets and the average amount of net earnings of the corporation for the years 1936 to 1940, inclusive, by allowing an eight percent rate of return upon the average tangible assets and by deducting the amount of return on tangibles from the average net earnings for the period and capitalizing the excess at 15 percent, thusly: Year
Average Tan-
Net Income
Ended
gible Assets
After Taxes
11-30-36
$120,260.07
$ 19,389.84
11-30-37
141,635.61
32,903.17
11-30-38
137,551.23
8,311.86
11-30-39
149,562.64
25,239.16
11-30-40
189,363.95
55,264.34
Totals
$738,373.50
$141,108.37
Average
$147,674.70
$28,221.67
Income from tangible assets
8% of $147,674.70
$ 11,813.98
Income from intangible (good will)
$ 16,407.69
Capitalized at 15%
($16,407.69 /.15)
$109,384.60
*191 No value had ever been set up on the corporation's books for intangible assets. The corporation had no intangible assets other than good will at the time of dissolution. Respondent has determined that, as owner of 200 shares of the common stock of the corporation, petitioner Richard A. Hopping received, in the year 1941, as a dividend in liquidation, assets having a value of $74,707.57, and that this petitioner realized a capital gain from this transaction amounting to $54,707.57 which is includible in his gross income in the amount of $27,353.79. Respondent has made a similar determination with respect to petitioner Bruce S. Hopping, who had also owned 200 shares of the common stock of the corporation. With respect to petitioner W. Frank Hopping, respondent has determined that, as owner of 50 shares of the common stock of the corporation, W. Frank Hopping received, in 1941, upon liquidation of the corporation, assets having an aggregate value of $18,676.89, and that this petitioner realized a capital gain of $13,676.89 on this transaction, 50 percent of which was includible in his gross income. The deficiency in each proceeding is based upon the addition to each petitioner's *192 gross income of his allocable portion of the good will of the corporation, which was allegedly distributed to each petitioner upon dissolution of the corporation. In docket No. 11931 the deficiency is also due in part to the disallowance of a deduction for a bad debt which disallowance has not been assigned as error. At the time of liquidation the corporation had good will, the value of which amounted to $10,000. Opinion KERN, Judge: The issues here involved are whether there should be included in the value of assets distributed to the respective petitioners on liquidation of the corporation an amount representing the value of good will and, if so, in what amount. Respondent does not contend that any intangible assets other than good will were received by the petitioners as stockholders upon liquidation. The pertinent provisions of the Internal Revenue Code are set forth in the margin. [1]
*193 Respondent has determined that the corporation had good will valued at $109,384.60 which was distributed to the stockholders, including petitioners, at the time of its liquidation. Respondent used the so-called capitalization of earnings method in this valuation. Petitioners contend that the success of the corporation was dependent solely upon the personal qualifications and skill of certain stockholder-officers of the corporation and that the corporation had no good will at that time. In the alternative, petitioners argue that even if it be assumed that the corporation had good will, the valuation determined by the respondent is excessive. In support of this last contention, petitioners urge that the five-year period used by the respondent in his computation is not fairly representative of the normal earning ability of this corporation and that the rates used by respondent in determining the rate of return on tangibles and in capitalizing the remaining earnings are not reasonable. "Good Will" has been defined as follows in Cyclopedic Law Dictionary (1940 Ed.): "The benefit which arises from the establishment of particular trades or occupations. The advantage or benefit which *194 is acquired by an establishment, beyond the mere value of the capital, stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluance or punctuality, or from other accidental circumstances or necessities or even from ancient partialities or prejudices. Story, Partn. § 99. * * * "It includes only that estimation and repute which is peculiar to the particular establishment. It is that species of connection in trade which induces customers to deal with a particular firm." This definition was quoted with approval in the recent case of D. K. MacDonald; 3 T.C. 720, 726. In Howard B. Lawton, 6 T.C. 1093, 1100, we commented further on the concept of good will thus wise: "Good will as a concept embraces many elements. No precise definition can be formulated. It is not necessarily confined to a name. It may also attach to a particular location where the business is transacted, or to a list of customers, or to other elements of value in the business as a going concern. *195 Cf. C. C. Wyman & Co., 8 B.T.A. 408. However, good will does not attach to a business or a profession, the success of which depends solely on the personal skill, ability, integrity, or other personal characteristics of the owner, D. K. MacDonald, 3 T.C. 720. As was said in Providence Mill Supply Co., 2 B.T.A. 791; 'Ability, skill, experience, acquaintanceship or other personal characteristics or qualifications do not constitute good-will as an item of property.'" In the instant case, it is clear that the success of the business was largely attributable to the skill, ability, experience and business acquaintanceships of the two principal officer-stockholders of this corporation. As noted above, their ability, skill, experience, acquaintanceship or other personal characteristics do not constitute good will as an item of property of the corporation. It may also be pointed out that the clientele of this corporation was limited; the corporation did not enjoy general public patronage; it had not built up an extensive following by means of advertising campaigns; and it did not receive any significant amount of business by reason of the location *196 of its business establishment. However, we do not believe that if Ripley and Hopping had left the organization to engage in a similar line of business, nothing but an inert corporate shell would have been left, without business and unable to obtain orders or to handle any orders which might come in. We are here dealing with a corporation which had a long and, in so far as we know, successful background. True, this corporation first received separate corporate life in 1929, but, in the eyes of the purchasers of the specialized material in which it dealt, it was undoubtedly regarded as a continuation of the old company. It seems most unlikely that it did not fall heir to the good reputation of the old company for service, reliability, and honesty, which the old company presumably had. Although we are satisfied that the success of the business was largely due to the personal characteristics and business acquantanceships of W. Frank Hopping and William C. Ripley, we are not convinced by the evidence here before us that the corporation had absolutely no good will. It has not been shown that the skill required for the sale of long-leaf yellow pine is so rare, so peculiar and so great *197 that the corporation could not have hired someone of adequate skill to carry on the business if W. Frank Hopping and William C. Ripley had left the corporation. On the record before us we conclude that the corporation possessed some good will aside and apart from the personal skill, ability, and other personal characteristics of Ripley and Hopping. Having thus determined that the corporation did have some good will, we are required to determine the value of that intangible asset. In doing so, we have considered all of the facts, the contentions of the parties and the various factors and formulae urged by them as pertinent to a solution of this question. After a careful consideration of all these matters, we have concluded that the good will of the corporation which was distributed to its stockholders, including petitioners, upon its liquidation, had a value of $10,000. Decision will be entered under Rule 50. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. * * *
(c) DISTRIBUTIONS IN LIQUIDATION. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock * * *. The gain or loss to the distributee resulting from such exchange shall be determined under Section 111, but shall be recognized only to the extent provided in Section 112. SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS. (a) COMPUTATION OF GAIN OR LOSS. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in Section 113 (b) for determining gain * * *. [Section 113 (b) is not otherwise applicable to the instant case] (b) AMOUNT REALIZED. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. * * *
SEC. 112. RECOGNITION OF GAIN OR LOSS. (a) General Rule. - Upon the sale or exchange of property the entire amount of the gain or loss, determined under Section 111, shall be recognized, except as hereinafter provided in this section. [Section 112 is not otherwise applicable in the instant case] * * *↩