Wolf Bergman v. Commissioner.
Bergman v. Commissioner
Docket No. 12026.
United States Tax Court
1947 Tax Ct. Memo LEXIS 54; 6 T.C.M. (CCH) 1118; T.C.M. (RIA) 47285; October 23, 1947
Mordecai Tonkonogy, Esq., 503 Brisbane Bldg., Buffalo, N. Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves an income and victory tax deficiency of $5,200.42 for 1943. The petitioner reported in his 1942 return a loss from the sale of property. He deducted that loss and thereby showed a net loss for 1942 which he carried over and deducted in his 1943 return. The Commissioner disallowed the amounts deducted in both years under section 24(b) of the Internal Revenue Code. The sole question is whether the petitioner owned, directly or indirectly, more than 50 per cent in value of the outstanding stock of a corporation which purchased the property. *55 If so, the deductions are precluded by section 24(b). Findings of Fact The petitioner is an individual. His returns for 1942 and 1943 were filed with the collector of internal revenue for the 28th district of New York, at Buffalo. The petitioner reported in his 1942 return that he sustained a loss of $34,950 from a sale of a brick business building. He stated therein that he had acquired the property in 1926 at a cost of $119,000 and he reported depreciation allowed (or allowable) of $24,050. The actual value of the property in 1942 was $58,890. The petitioner was president of the W. Bergman Co., Inc., as well as the owner of a property in which the corporation's offices were located. On April 2 or 3, 1942, he agreed to sell the property to the corporation for $60,000. On April 3, 1942, the stockholders of the corporation authorized the purchase of the property for $60,000, payable as follows: $13,000 in preferred stock, $1,000 in cash, and the balance by assuming payment of $46,000 then remaining unpaid on a mortgage on the property. The stockholders of W. Bergman Co., Inc., as of December 31, 1941, were as follows: No. Shares of
No. Shares of
Stockholder
Relationship to
Preferred Stock
Common Stock
Wolf Bergman
$100.00 par
$5.00 par
Wolf Bergman
205
A. Frank Cowan
Son-in-law
144
160
Sol J. Levy
Son-in-law
208
320
Blanche B. Levy
Daughter
406
Richard S. Levy
Grandson
73
William T. Levy
Grandson
58
Claire F. Levy
Granddaughter
53
A. F. Cowan, Jr.
Grandson
162
Theodora Cowan
Granddaughter
153
Sylvia Shapiro
Daughter
280
Frances Shapiro
Granddaughter
38
Carl Shapiro
Grandson
38
Ruth Shapiro
Granddaughter
47
Frances Weiss
Granddaughter
9
1,874
480
*56 The book assets and liabilities of Bergman Co., Inc., as of January 1, 1942, were as follows: ASSETS
Cash
$ 38,581.76
Accounts receivable
137,928.68
Inventories
151,845.54
Depreciable assets - depreciated
9,646.64
Land
1,000.00
Stock - domestic corp.
10,000.00
Cash surr. value - life ins.
23,393.20
Deferred expenses
1,307.04
Total assets
$373,702.86
LIABILITIES
Accounts payable
$111,009.46
Accrued expenses
8,407.99
Reserve for federal tax
5,271.86
Preferred stock
187,400.00
Common stock
2,400.00
Undivided profits
59,213.55
Total liabilities
$373,702.86
The average annual net income of W. Bergman Co., Inc., for the years 1934 through 1941 was $11,613.21. The net income was $5,385.20 for 1939, $11,858.25 for 1940, and $23,087.44 for 1941 - an average annual net income of $13,443.63 for the three years. The average annual sales of W. Bergman Co., Inc., for the years 1934 through 1941 was $974,962.81. Opinion LEMIRE, Judge: We will assume for present purposes that (1) the petitioner sold certain property in 1942 to W. Bergman Co., Inc., for $60,000 and that (2) the property had cost him $94,950, as adjusted for depreciation. *57 While these facts appear only as statements made by the petitioner in his 1942 return, the respondent has not raised any question about the proof of the sale in 1942 or the basis for determining loss from that sale. Prior to the sale the petitioner owned 1,522 out of 1,874 shares of the outstanding preferred stock of W. Bergman Co., Inc., either directly or indirectly, as defined in section 24(b). He did not own any of the 480 shares of common stock then outstanding. The book value of all the stock, as of December 31, 1941, was $254,285.41 (including a $5,271.86 reserve for federal taxes). The par value of the stock owned by the petitioner, either directly or indirectly, was $152,200, or more than 50 per cent of the book value of all the stock. There is no evidence of any other value of the tangible assets except the book value and there is no other evidence of the book value as of April 1942 when the sale was agreed upon. There is no evidence to show when the sale actually occurred. However, both parties state in their respective briefs that the date was April 1942. The petitioner contends that the books of the purchasing corporation do not reflect its true net worth and that *58 it had good will of at least $59,304.45, which enhanced the value of the common stock, with the result that the petitioner (who owned preferred stock) owned only 49.36 per cent in value of all the outstanding stock at the time of the sale. He argues as follows: "Good Will has been defined as 'Super Profits', profits in excess of a reasonable return on investment. The purchasing corporation in the instant case has established 5% as a reasonable return. The preferred stockholders are entitled to 5% dividends. Therefore, it is logical to consider a 5% dividend on the common stock, also as a reasonable return on the investment in the Corporation. "The outstanding stock of the purchasing corporation at the time of the sale was $187,400.00 in preferred stock and $2,400.00 in common stock, or a total of $189,800.00. A return on this investment at 5% equals $9,490.00. The average annual earnings of the Corporation as shown in paragraph (i) herein is $13,443.63. The amount of the average annual earnings in excess of a reasonable return, is $3,953.63. This constitutes super profits which capitalized at 15% results in a valuation of $59,304.45 for Good Will." The petitioner's argument is *59 not supported by any evidence in the present record that W. Bergman Co., Inc., had any good will. While earning capacity has been used as a yardstick in the valuation of good will, it does not in itself prove the existence of good will. The earnings of a corporation above a fair return on the investment of its stockholders may be attributable to other factors. In Howard B. Lawton, 6 T.C. 1093, 1100, we said: "Good will as a concept embraces many elements. No precise definition can be formulated. It is not necessarily confined to a name. It may also attach to a particular location where the business is transacted, or to a list of customers, or to other elements of value in the business as a going concern. Cf. C. C. Wyman & Co., 8 B.T.A. 408. However, good will does not attach to a business or a profession, the success of which depends solely on the personal skill, ability, integrity, or other personal characteristics of the owner, D. K. MacDonald, 3 T.C. 720. As was said in Providence Mill Supply Co., 2 B.T.A. 791: 'Ability, skill, experience, acquaint-anceship or other personal characteristics or qualifications do not constitute *60 good-will as an item of property.'" In the absence of evidence showing that W. Bergman Co., Inc., had any good will we are obliged to sustain the Commissioner's determination. We do not pass upon the merits of the petitioner's formula for measuring good will, if any, nor upon the consequences thereof under section 24(b). Decision will be entered for the respondent.