Savings Assurance Agency, Inc. v. Commissioner.
Savings Assurance Agency, Inc. v. Commissioner
Docket No. 87636.
United States Tax Court
T.C. Memo 1963-52; 1963 Tax Ct. Memo LEXIS 291; 22 T.C.M. (CCH) 200; T.C.M. (RIA) 63052; February 21, 1963
*291 Held, where petitioner acquired an insurance expiration list from the estate of a deceased sole proprietor of a casualty insurance agency which sole proprietorship was not a going concern at the date of acquisition and where the expiration list was the sole intangible asset acquired, the list does not constitute an asset in the nature of goodwill within the meaning of sec. 1.167(a)-3, Income Tax Regs. Its cost basis is recoverable over the period of its useful life. William F. Hood, Esq., R. G. Hentschell, Pres., pro se, for the *292 petitioner. John J. Yurow, Esq., and Ralph A. Anderskow, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of petitioner for the taxable years 1956 and 1957 in the respective amounts of $967.50 and $1,027.41. The sole issue presented by the pleadings is whether respondent has erred in disallowing as an amortization deduction in each year one-fifth the cost to petitioner of an expiration list acquired from the estate of a casualty insurance agent. Findings of Fact Facts which have been stipulated are so found. The petitioner is a Michigan corporation having its principal place of business in Manistique, Michigan. It filed Federal income tax returns for the taxable years 1956 and 1957 with the district director of internal revenue for the district of Michigan. On February 26, 1960, petitioner filed claims for refund of income tax paid for the taxable years 1956 and 1957 in the amounts of $232.50 and $172.60, respectively. The petitioner was incorporated on or about January 3, 1956, for the purpose of taking over and carrying on a general insurance agency which *293 had theretofore been conducted in Manistique, Michigan, by the State Savings Bank of Manistique, under the name of Savings Insurance Agency, hereinafter referred to as Savings. On or about January 3, 1956, petitioner issued 4,000 $5.00 par value common shares on a share-for-share basis to the stockholders of the State Savings Bank of Manistique. On the same date, the State Savings Bank of Manistique transferred all of the assets of Savings to petitioner, subject to the liabilities of that agency. For many years prior to his death, on May 17, 1955, Norman P. Martin had conducted a general casualty insurance agency in Manistique under the name of Martin Insurance Agency. On or about July 1, 1955, Savings purchased certain tangible assets, at a cost of $1,500, and certain intangible property, at a cost of $20,000, from the estate of Martin. The records of the Martin Insurance Agency pertaining to policy expirations were transferred to Savings. These records showed the date on which each policy of insurance then in force which had been written by the Martin Insurance Agency would expire, the name and address of the person holding such policy, the type of policy, the type of property *294 insured, the amount of insurance provided, and the name of the issuing insurance company. A portion of the policies from which such information was obtained were automobile policies which expired within 1 year. The remainder consisted of fire and casualty policies which had been written for periods of 1, 3, or 5 years. No policy which had been written by the Martin Insurance Agency expired more than 5 years from the date of purchase. The bill of sale whereby Savings acquired from the estate the property above mentioned described the intangible property acquired as follows: All the right, title and interest of whatsoever nature which Norman P. Martin, deceased, had in and to the general insurance business known as Martin Insurance Agency at the time of his death and/or all right, title and interest whatsoever which the undersigned, as administrator aforesaid, has in and to the said general insurance business, and/or all right, title and interest whatsoever which the Estate of Norman P. Martin has in and to the said general insurance business including all licenses, privileges and franchises owned, held or enjoyed by the said business known as Martin Insurance Agency to the extent *295 that same are transferable or assignable, and including also the good will of said business known as Martin Insurance Agency and the right to all policy expirations, and further including those books and records of said business known as Martin Insurance Agency to the extent that same disclose the name and address of all persons now holding policy or policies of insurance issued by Martin Insurance Agency, as agent, and all books and records to the extent that same disclose the insurance coverage or policies now in force and issued by the said business known as Martin Insurance Agency, as agent. No "licenses, privileges and franchises owned, held or enjoyed" by Martin were transferable and none were transferred to petitioner under the bill of sale. The bill of sale thereafter lists in detail the tangible property conveyed and the following pertinent paragraph: The intention being that this Bill of Sale shall cover all property and rights of every nature and description owned by Norman P. Martin at the time of his death and used in or forming a part of the said general insurance business known as Martin Insurance Agency, EXCLUDING ONLY all cash, notes receivable, accounts receivable, *296 choses in action and bank accounts. Savings did not know at the time of the purchase the number of policies then in force which had been sold by the Martin Insurance Agency; nor was any list thereof compiled after the purchase. The deduction for depreciation claimed by petitioner was based upon a percentage of the cost of the aggregate expirations rather than upon the number of expirations which occurred in the taxable year. The possession of the insurance expirations purchased from the estate of Martin placed petitioner in an advantageous position to secure insurance business from the former Martin customers by providing petitioner with the means to be aware of the insurance needs of, and to make timely calls upon, such customers. Petitioner, however, made no reference to the Martin Insurance Agency in its dealings with its customers of the public generally although previously Savings had publicly announced that it had purchased the insurance business formerly operated by Martin. The insurance companies represented by Martin at the date of his death were represented by Savings and petitioner after the date of the purchase of the Martin assets, a portion of which companies *297 having been previously represented by Savings. Manistique has a static population of about 4,900 and is located in a county in the upper peninsula of Michigan, the entire population of which is also static at about 9,000. Martin for several years prior to his death had acquired an undesirable personal reputation in Manistique and its environs growing out of public drunkenness, domestic peccadilloes which were publicly displayed, and publicly known difficulties of a litigious nature with some of the insurance companies whose policies he had sold. At his death he possessed no goodwill in the area in which he had carried on his insurance agency. It was the practice of Savings and petitioner, as its successor, to contact each policyholder whose policy was about to expire for the purpose of soliciting a renewal of the policies written by the Martin Insurance Agency. Personal contact to solicit a renewal from former Martin customers was made by a representative of petitioner approximately 30 days prior to the expiration of the policies which had been written by the Martin Insurance Agency. Some former out-of-town customers of the Martin Insurance Agency were contacted by petitioner's *298 predecessor and petitioner by mail to solicit renewals prior to expiration of their policies which had been written by the Martin Insurance Agency. As of 1962 petitioner had renewed 299 of the policies originally sold by Martin. Ultimate Findings The policy expiration information purchased by petitioner from the estate of Martin was an aggregate intangible asset which had a definite useful life of not more than 5 years. The policy information was a wasting asset not in the nature of goodwill. Opinion Petitioner here seeks to recover the cost of the intangible property, designated for convenience as policy expirations, by way of amortization deductions under section 167(a) of the Internal Revenue Code of 1954. [1] Respondent has disallowed such deductions on the ground that the policy expirations constitute an intangible which is "good-will like" in its character. He therefore takes the position that the deductions are prohibited under sec. 1.167(a)-3 of his regulations. [2] He further contends that in any event the asset is not subject to any form of depletion or depreciation because it has an indeterminate useful life. *299 In support of his position respondent cites as an indication of the general characterization placed upon such assest as "insurance expirations" as "intangibles in the nature of good will" the following authority, among others: Aaron Michaels, 12 T.C. 17; George J. Aitken, 35 T.C. 227, appeal dismissed (C.A. 6); Edward A. Kenney, 37 T.C. 1161; Anchor Cleaning Service, Inc., 22 T.C. 1029; Rainier Brewing Co., 7 T.C. 162, affd. 165 F. 2d 217 (C.A. 9); and C. C. Wyman & Co., 8 B.T.A. 408. We find these cases and others cited by respondent on this point to be distinguishable from the case before us. In each of those cases there was involved a purchase or sale of an entire business as a going concern or a covenant not to compete. It is understandable in that situation that intangibles of the kind here in controversy would be considered as an indivisible part of the bundle of intangibles which together constitute the goodwill of a business which is carried on by the purchaser, but here we have a clear indication that no goodwill existed which the seller could convey to the purchaser. We view this *300 purchase as the acquisition of a single aggregate intangible asset uncoupled with any other intangibles which can be found to have any relationship to goodwill. It is true that the bill of sale by virtue of which petitioner acquired title to the assets therein enumerated is couched in terms of the sale of an entire business with specific exceptions, but these terms could not and did not effectuate any transfer to petitioner of assets which, although enumerated, were nevertheless nonexistent. The assets conveyed did not include a going business and did not include anything in the nature of goodwill for that reason. Of course, even though the policy expirations are other than goodwill, their cost may not be recovered by amortization unless they are a wasting asset with a determinable useful life. By analogy with U.S. Industrial Alcohol Co. v. Helvering, 137 F. 2d 511 (C.A. 2); Thrifticheck Service Corporation, 33 T.C. 1038, affd. 287 F. 2d 1 (C.A. 2); Anchor Cleaning Service, Inc., supra; and Westinghouse Broadcasting Co., 36 T.C. 912, affd. 309 F. 2d 279 (C.A. 3), certiorari applied for Jan. 17, 1963, respondent *301 makes the contention that no date may be determined which would mark the cessation of benefits to be derived by petitioner from the policy expirations. He insists that, as in the cited cases, the mere likelihood of continued business after the expiration of policy renewals effectuated by petitioner from the list prevents the determination of such a date and therefore prohibits the deduction of any amount as recovery of the cost thereof. We think however that this record makes inapposite any application of these cases to the one at bar. It is reasonable to conclude that in a town the size of Manistique, with a static population, there would be no potential purchaser of insurance who would not be readily available to petitioner or any insurance agent as a customer. To petitioner, the original acquaintanceship with each such potential customer was an accomplished fact before its acquisition of the policy expirations. The sole value to petitioner of the policy expirations lay in the knowledge thus afforded of the appropriate and opportune time at which such customers would be most susceptible to petitioner's efforts to sell a policy. In this instance, petitioner's efforts, alone, unaided, *302 and in fact possibly hampered by the customer's past relationship with Martin, was the factor which produced any benefit petitioner derived from such foreknowledge. Any future business between petitioner and customer so derived clearly depended upon goodwill which petitioner itself engendered through its services and the terms of policies it sold unaided in any way by the policy expirations it had acquired from Martin. When the information regarding the expiration dates of policies outstanding had been once used by petitioner, the value and benefit to petitioner of such information had been completely exhausted, and it follows that the last use thereof marks the end of the life of the asset. No case we have found or to which our attention has been called designates a customer list as more than a goodwill-like asset and the rationale of cases holding such intangibles nondepreciable does so only because they are but a part of other assets, the aggregation of which constitutes the goodwill of a going concern. We find no other case where, as here, the policy expirations or like intangibles have so clearly constituted the sole asset acquired by a taxpayer. Petitioner's contention is therefore *303 sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. ↩
2. Income Tax Regs. § 1.167(a)-3 Intangibles. - If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. No allowance will be permitted merely because, in the unsupported opinion of the taxpayer, the intangible asset has a limited useful life. No deduction for depreciation is allowable with respect to good will. For rules with respect to organization expenditures, see section 248 and the regulations thereunder.↩