Howard B. Lawton, Petitioner, et al.,[1] *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 5592, 5620, 5621, 5622, 5623, 5624.
Promulgated May 21, 1946.

*J. Lee Boothe, C. P. A.,* and *Ethan C. Prewitt, Esq.,* for the petitioners.
*Melvin S. Huffaker, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Norman B. Lawton and Helen S. Lawton; Leonard B. Lawton; Dorothy K. Whiton; Vivian Stanley; and William Blakley.

## OPINION.

VAN FOSSAN, *Judge*: The first issue is whether or not there should be included in the value of the assets distributed on liquidation of the corporation an amount representing the value of good will and, if so, in what amount.

In computing the value of the assets at the time of dissolution the officers of the corporation did not include any amount representing good will. In his notice of deficiency the respondent determined that the corporation possessed good will, the value of which he computed according to the capitalization of earnings method. This method has received approval in several cases. See *Otis Steel Co.*, 6 B. T. A. 358; *Schilling Grain Co.*, 8 B. T. A. 1048; *Kaltenbach & Stephens, Inc.*, 12 B. T. A. 1009. Application of this method, according to the respond-

ent's contention, shows that as of August 31, 1940, the good will of the Star Cutter Co. had a value of $174,038, computed as follows:

```
Period, 12-31-35 to 8-31-40
Average net earnings_____ $31, 477. 39
Average capital and surplus_____ $67, 145. 13
8 percent return on above_____     5, 371. 61
                                                              _____
Earnings attributable to intangible assets_____   26, 105. 78
Capitalized at 15 percent (value of good will) _____  174, 038. 00
```

The petitioner contends that the corporation had no ascertainable good will at the date of its dissolution. He asserts that the excess earning power of the corporation was due not to good will, but to the skill and ability of the petitioner, of Norman and Leonard Lawton, and of Blakley. In the alternative, he contends that if good will did attach to the corporation, the value placed thereon by the respondent is excessive.

Good will as a concept embraces many elements. No precise definition can be formulated. It is not necessarily confined to a name. It may also attach to a particular location where the business is transacted, or to a list of customers, or to other elements of value in the business as a going concern. Cf. *C. C. Wyman & Co.*, 8 B. T. A. 408. However, good will does not attach to a business or a profession, the success of which depends solely on the personal skill, ability, integrity, or other personal characteristics of the owner, *D. K. MacDonald*, 3 T. C. 720. As was said in *Providence Mill Supply Co.*, 2 B. T. A. 791: "Ability, skill, experience, acquaintanceship or other personal characteristics or qualifications do not constitute good-will as an item of property."

In the instant case, we think there can be little doubt that the success of the business depended almost entirely on the ability and personal qualifications of the individuals named. Ninety-five percent or more of the corporation's activities consisted in the designing and manufacture of special tools. The petitioner had a long experience in this type of work. Prior to the formation of the corporation he had been employed by several other companies as a designer of such tools. His personal reputation in the trade is shown by the fact that when he organized the corporation he retained the business of his former employer relating to the production of special tools.

The business of the Star Cutter Co., both before and after the dissolution of the corporation, required a high degree of personal skill and ability. One of the petitioner's witnesses, a representative of Pontiac Division of General Motors, testified that, in many cases before the design for a tool was made, petitioner was called in and his opinion obtained. In addition, the Lawtons, on many occasions, were called upon to rectify any difficulty experienced in the operation of the

tools installed by the corporation, or those of other manufacturers. No charge was made for this service. It is thus clear that the personal qualifications and ability of the Lawtons constituted the important factor in securing customers and producing the income of the corporation. One witness, the general tool supervisor of Chrysler-Dodge, testified, "* * * as far as I am concerned, without the Lawtons I do not know anything about the Star Cutter Company."

We are satisfied from the evidence that nothing is attributable to good will in the sense in which that term is used in the decided cases. It follows that the respondent erred in this phase of his determination.

The second issue is whether or not the petitioner is taxable on the entire gain realized on the distribution of the assets of the corporation at the time of its dissolution. The respondent contends that prior to the purported gifts of stock the petitioner was the sole stockholder of the corporation; that the transfers of stock did not constitute completed valid gifts; that, consequently, the petitioner continued to be the sole stockholder of the corporation up to the time of its dissolution and is taxable on the entire gain incident thereto.

It is to be noted that prior to September 1, 1937, the petitioner was the record holder of 980 shares. Of the remaining 20 shares, 10 were held by Mrs. Lawton and 10 by Blakley. The respondent argues that these were mere qualifying shares which did not, in any way, lessen the petitioner's complete ownership of the corporation.

With respect to the 10 shares held by Blakley, we do not think it can be said that they were mere "qualifying" shares, nor that the petitioner was taxable on the gain applicable thereto. Blakley was not an original incorporator or director of the corporation. He was first employed in 1927, some two months after the corporation had been organized. He purchased the 10 shares in 1929 from one of the original incorporators for the sum of $250. There is no suggestion that they were acquired otherwise than in an arm's length transaction. Consequently, we hold that the gain relating thereto is taxable to Blakley.

We think, however, that the respondent must be sustained in his contention with respect to the 10 shares of which Mrs. Lawton was the record holder. She was one of the incorporators of the corporation and the shares were issued to her at the time of its organization. There is no evidence that Mrs. Lawton paid any consideration for these shares and no evidence that she exercised dominion or control over them. Such evidence as there is in the record tends to support the respondent's contention that they were mere qualifying shares and, in the absence of sufficient competent evidence to the contrary, he must be sustained.

Whether or not the remainder of the gain on liquidation is taxable *in toto* to the petitioner depends on whether or not he made valid completed gifts of stock in 1937, 1938, 1939, and 1940.

A valid gift includes the following essential elements: (1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor absolutely and irrevocably to divest himself of the title, dominion, and control of the subject matter of the gift *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; and (6) acceptance of the gift by the donee. *Adolph Weil,* 31 B. T. A. 899, and cases cited therein.

We do not think the evidence in the instant case is sufficient to support the petitioner's contention that valid, bona fide gifts of stock were made. The evidence consisted entirely of oral testimony, due to the loss of the books and records in 1942 or 1943. There is thus no direct evidence that the transfers of the certificates were made on the corporation's record books. The petitioner testified that he and Mrs. Lawton, as president and secretary of the corporation, respectively, canceled the old certificates and issued the new ones. This was done at the annual meetings, but he did not recall whether or not the purported donees were present at the time. It is undisputed that the stock certificates were not given to the supposed donees, but were kept in the company's safe. Blakley testified that he never saw the shares that were supposedly given to him.

There are other factors indicating that the petitioner never relinquished the dominion and control of the subject of the gifts. There is no evidence that the purported donees ever exercised their voting rights on the stock. No dividends were paid, although the business was growing rapidly. We deem significant also the manner in which Mrs. Lawton's "gifts" paralleled those of her husband. Her "gifts" were complementary to those of the petitioner and were designed to equalize the holdings of each member of the family. The conclusion we are compelled to draw from this is that Mrs. Lawton never had an unfettered dominion over the shares purportedly given to her, but was completely amenable to the petitioner's wishes in the matter of their disposition. The petitioner was president and general manager of the corporation prior to the time of the alleged gifts. There is nothing in the record to indicate that his control of the corporation was any the less after they had been made. In *Coffey* v. *Commissioner,* 141 Fed. (2d) 204, the court said:

* * * It is the general rule that in order to complete a gift the donor must do everything reasonably permitted by the nature of the property and the circumstances of the transaction in parting with all the incidences of owner-

ship. Continued possession, dominion and control over the subject matter of the gift and the fruits thereof afford ample basis for the taxation of the income to the donor. * * *

Here the evidence fails to show that the petitioner parted with the complete dominion and control of the subject matter of the gifts. Lacking such evidence, we must sustain the respondent.

The last issue is whether or not a valid partnership existed after September 1, 1940, with respect to the ownership and operation of the Star Cutter Co.

The petitioner contends that a valid partnership was in existence, composed of the petitioner, Lucy M. Lawton, Norman B. Lawton, Leonard B. Lawton, Dorothy K. Whiton, and Vivian Stanley, each having a 15 percent interest therein, and William Blakley, having a 10 percent interest therein. The respondent contends that there was no partnership; that the business was owned solely by the petitioner during the taxable years; and that the income therefrom is taxable to him in its entirety.

With respect to the interests in the partnership purportedly owned by Lucy M. Lawton, Dorothy K. Whiton, and Vivian Stanley, we think the case clearly comes within the rationale of *Commissioner* v. *Tower*, 327 U. S. 280, and *Lusthaus* v. *Commissioner*, 327 U. S. 293. In the *Tower* case, the Court said:

There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U. S. C. §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, The Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws.

Here the individuals named contributed nothing to the capital of the business. Their supposed contributions consisted solely of their respective shares in the corporate assets as represented by the stock purportedly given to them. As we have held above, however, no completed gifts of stock were ever made by the petitioner, who continued to own and control the corporation to the time of its dissolution. There is no evidence that the petitioner's wife or daughters in any way participated in the management or control of the business. No more is there evidence of those "vital additional services" characterized as essential by the Supreme Court.

Lucy M. Lawton rendered greater services to the corporation than to the partnership. During the taxable years she worked only three

days a week, helping to make up the pay roll. Vivian Stanley worked for the corporation from 1931 to 1937. She did no work after that time and performed no services for the partnership. Dorothy K. Whiton worked in the office during the taxable years doing general office and clerical work. Her work for the partnership was of the same type as that performed for the corporation and for which she had received a salary of $25 per week. The services performed by her, as well as those by Mrs. Lawton, were obviously a negligible factor in the production of income. See *M. M. Argo*, 3 T. C. 1120. We conclude, therefore, that the respondent did not err in taxing to the petitioner the shares of the income credited to his wife and daughters. Cf. *Lowry v. Commissioner*, 154 Fed. (2d) 448.

We think a different answer is called for, however, with regard to the shares of the income credited to the petitioner's sons and to William Blakley. The evidence shows that these individuals worked steadily for the business for many years, the youngest, Leonard B., coming in in 1937. Norman Lawton started to work for the corporation in 1936, after completing an engineering course at the University of Michigan. His work kept him in the shop most of the time. He developed a specialized machine which was more accurate than any of its kind in existence at that time. Occasionally he did "outside work," which called for highly developed skill and ability. In 1940 he was works manager of the entire shop.

The petitioner's other son, Leonard, began his activities by familiarizing himself with the operation of all of the machines in the shop. Later he was engaged in selling and in performing "outside work." During the taxable years, when the pressure of war orders had eliminated the need for outside salesmen, Leonard was again in the shop, where he had charge of the third shift.

Blakley has been with the business since shortly after the corporation was organized in 1927. While his duties were not shown in detail, it appears that in 1940 he was shop superintendent, was in charge of manufacturing, and had charge over all the shifts.

In addition to his services, Blakley made a small contribution to the capital of the business represented by his shares of stock in the corporation. Although the petitioner's sons contributed no capital to the business this, of course, does not prevent their being partners if their services contributed substantially to the production of the income. See *Meehan v. Valentine*, 145 U. S. 611. As the Court said in the *Tower* case, *supra:*

* * * The question here is not simply who actually owned a share of the capital attributed to the wife on the partnership books. A person may be taxed on profits earned from property, where he neither owns nor controls it. *Lucas v. Earle, supra.* The issue is who earned the income and that issue depends on whether this husband and wife really intended to carry on business as a partnership. Those issues cannot be decided simply by looking at a single step

in a complicated transaction. To decide who worked for, otherwise created or controlled the income, all steps in the process of earning the profits must be taken into consideration. * * *

We think the evidence here amply shows that the services of Norman and Leonard Lawton and of William Blakley substantially contributed to the production of the income of the business and that these individuals and the petitioner "really intended" to carry on the business as a partnership. Consequently, we hold that they are taxable upon the shares of income credited to them and that the respondent erred in taxing these amounts to the petitioner. Cf. *Estate of Frank G. Ennis, Sr.,* 5 T. C. 1096.

It appears from the record that a part of the income of the business for the year 1941 is subject to renegotiation. Any adjustment which may be necessary because of this can be made in the recomputation.

*Decisions will be entered under Rule 50.*