August J. Fischer v. Commissioner. C. W. Erne v. Commissioner.
Fischer v. Commissioner
Docket Nos. 14449, 14591.
United States Tax Court
1948 Tax Ct. Memo LEXIS 62; 7 T.C.M. (CCH) 814; T.C.M. (RIA) 48230; October 25, 1948
*62 Joseph I. Brody, Esq., Empire Bldg., Des Moines, Ia., and H. Telfer Mook, Esq., for the petitioners. Gene W. Reardon, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: The cases of August J. Fischer and C. W. Erne were consolidated for trial and opinion. They involve a determination of income tax deficiencies for the years 1941 and 1943 as follows: Year
August J. Fischer
C. W. Erne
1941
$12,851.51
$11,697.70
1943
54,879.58
55,260.89
The questions now remaining for the Court's consideration are: (1) Did the Commissioner err in determining that petitioners' wives were not partners of Popcorn Growers & Distributors Company for its partnership year May 1, 1941, to September 30, 1941, and for the fiscal years ended September 30, 1942, and September 30, 1943, for income tax purposes? (2) Did the Commissioner err in determining that petitioners were each taxable upon one half of the capital gain realized upon liquidation of the corporation, Popcorn Growers & Distributors, Inc., on April 30, 1941? An issue relating to the gain upon liquidation of the corporation and corresponding issues relating to *63 the amount of partnership income for its taxable years ended September 30, 1941, and September 30, 1942, have been settled by the parties. The figures to determine these issues have been stipulated and the gain on liquidation and the partnership income for its said years can be computed under Rule 50. Two original questions involving a deduction for attorneys fees from the partnership income and the inclusion of an item of interest in the income of C. W. Erne for 1943 are not discussed in the briefs or urged by the petitioners and a decision thereof will therefore be rendered for the respondent. Findings of Fact Petitioner August J. Fischer resides at Wall Lake, Iowa, and filed the income tax returns involved herein with the collector of internal revenue at Des Moines, Iowa. He married Ila Maurine Fischer in 1937. Petitioner C. W. Erne resides at Wall Lake, Iowa, and filed his income tax returns for the years involved herein with the collector of internal revenue at Des Moines, Iowa. He married Lois A. Erne on December 2, 1939. Fischer entered the popcorn business about 1917 and about 1926 he formed a partnership with Erne. In 1933 the partnership business was incorporated *64 under the name of Popcorn Growers & Distributors, Inc., with the capital stock owned equally by each of the former partners. Up to April 30, 1941, when the corporation was dissolved, petitioners drew substantial salaries for their services to the corporation. Petitioners operated their popcorn business by entering into written growers' contracts with various farmers under which the corporation furnished the popcorn seed to the farmer at a fixed price and the farmer planted the seed on his own acreage, cultivated the corn, harvested the crop and then delivered the corn to the company at the contract price. These contracts were entered into by representatives of the company during the months of January to June. The corn is planted in the spring and delivered between October and December to be stored by the company. The company also frequently purchased popcorn directly from farmers who were not under contract. There is no recognized market for popcorn and the company sold its products by individual contracts with purchasers. During the growing season three inspections are made by the company of their contract growers to obtain information as to the progress of the crop and the prospects *65 of delivery. During periods of marked price fluctuations the final inspection which takes place in September is very important for the reason that on a rising market the growers are tempted to sell a part of their crop to other buyers and on a falling market there is a temptation to procure neighbors' popcorn and sell it to the company at the contract price. Fischer and Erne in operating the corporation had a general division of work. Erne handled the purchasing end of the business involving contracts with the growers, while Fischer generally handled the selling of the processed or shelled popcorn. They each, however, participated to some extent in the work of the other. Fischer married his present wife in 1937, a woman who had entered the employment of the popcorn company as a stenographer and secretary in 1926. She worked for the company from 1926 to 1928 and again from 1934 up to her marriage. In the intervening time she had worked as stenographer and bookkeeper and general office employee for other employers. She was well acquainted with the popcorn business as her father, who was a farmer, had also grown and sold popcorn. She had experience in buying, selling, keeping accounts, *66 and the necessary office work generally. She received customers and other who called at the office. At the time of her marriage she employed her own successor and instructed her in the work but continued to assist her husband in his duties as formerly. Prior to her marriage Mrs. Erne had been a school teacher for approximately 13 years. Beginning in 1933, six years before her marriage to Erne, she began accompanying Erne on his inspection trips on growing corn. She kept records of the inspections and became quite expert in her knowledge of corn and in prophesying crop yield. She also became acquainted with the buyers and brokers and from observation learned of the methods and procedure surrounding contracts with growers and with purchasers. The gross sales in pounds of corn and dollars received by the corporation from January 1, 1935 to April 30, 1941, were as follows: Year
Pounds
Dollars *
1935
1,305,900
$107,107.91
1936
1,244,800
90,186.43
1937
2,568,100
159,343.57
1938
2,430,900
118,029.36
1939
3,443,600
136,869.67
1940
5,511,200
184,360.92
1941 - (Jan. 1st to April
30th)
1,208,900
53,437.35
Due to the rapid *67 expansion of the corporation's business, particularly in 1940, Erne and Fischer required assistance. The corporation was shipping large quantities of corn into other states where it was not qualified to transact business and legal difficulties resulted. Fischer and Erne, together with their two respective wives, formed a sales partnership known as Popcorn Growers & Distributors Sales Company for the purpose of overcoming the sales difficulties in selling popcorn outside of Iowa. This partnership existed only from January 1 to April 30, 1941, when it was dissolved. The extent, if any, to which the wives contributed to this partnership is not disclosed and the Commissioner refused to recognize this partnership for tax purposes. No question pertaining to this partnership is now before the Court. On April 26, 1941, Fischer and Erne each made a gift to their respective wives of 12 1/2 shares of their stock in the corporation. A donor and donees report of this gift was made to the Internal Revenue Department in each case but no tax was due. On April 30, 1941, the corporation was liquidated and the assets distributed in kind to the stockholders, one-fourth thereof being delivered to Erne, *68 Fischer and each of the two wives, and the corporation was formally dissolved according to Iowa law. On the same date the sales partnership known as Popcorn Growers & Distributors Sales Company was also dissolved and the assets of this partnership distributed to the partners. On May 1, 1941, a partnership agreement was entered into by the parties with C. W. Erne, party of the first part, August J. Fischer, party of the second part, Lois A. Erne, party of the third part, and Ila Maurine Fischer, party of the fourth part. Each of the partners contributed as capital the assets which each had severally received from the dissolution of the corporation and the sales partnership. Relevant portions of the sales partnership agreement are as follows: "7. First and Second Parties are hereby constituted the General Managers of the business of the partnership and shall devote their entire time and attention thereto, and each of them is authorized to buy and sell merchandise and supplies in the ordinary course of business and to enter into contracts therefor. Third and Fourth Parties shall devote such time to the business of the partnership as each of them may deem proper or necessary and shall *69 work under the direction of the First Party and Second Party. However, nothing herein contained shall require the Third Party and Fourth Party to devote any specified amount of time to the business of the partnership. * * * "8. First Party and Second Party, and each of them, are given power and authority to borrow money from banks or trust companies or from any other persons, firms or corporations on behalf of the partnership and to execute notes and secure the same for and on behalf of the partnership. "9. The banks of the partnership shall be Iowa-Des Moines National Bank and Trust Company, Wall Lake Savings Bank and/or such other banks as the First and Second Parties shall from time to time agree upon. All checks upon any such partnership bank account shall be drawn in the firm name and may be executed by the First Party or the Second Party or by any person or persons designated by the First Party and Second Party in writing, which designation may be revoked at any time. * * * * *
"15. All matters relating to the carrying on of the partnership business and affairs shall be decided by a majority in interest of the partners. "16. All contracts, except promissory notes, *70 and checks made in the ordinary course of the partnership business as provided in Paragraph 9 hereof, and except sales or purchases made in the ordinary course of business, shall be signed or executed by the First Party and Second Party. * * *" The transfer of Fischer's stock to his wife was in fulfillment of an agreement which the two made at the time of their marriage when Fischer was paying alimony to his former wife and in order to give security to his prospective wife he agreed with her to transfer a half interest in his share of the popcorn business. This agreement had not been fulfilled, although discussed by Mr. & Mrs. Fischer, and in 1941, when she was expecting a second child, she insisted on the carrying out of this agreement. Fischer consulted with Erne and after consultation with Mrs. Erne a partnership was agreed upon. Both Fischer and Erne had the highest regard for the capabilities of the two women to be of material assistance in the conduct of the business and both Mrs. Erne and Mrs. Fischer entered into the partnership with the purpose of promoting the partnership business in every way within their respective abilities. Thereafter all matters relating to the carrying *71 on of the partnership business of substantial importance were decided at meetings participated in by all of the partners. In the early days frequent meetings were held where all partners were present. These meetings were later reduced to two to four a week. It was decided that Fischer and his wife were to run the office and Erne and his wife were to look after the buying, contracting, field inspections and plant work. While this had been the general division under the corporation, there had been considerable overlapping and much friction had developed between the partners because of this. The women participated in all matters pertaining to wages of employees, the acreage to be contracted for, the location of the farm tracts, the number of employees, the type of corn to be planted, the manner of using hybrid corn, and the sales to be made. On one occasion the two women, when their husbands were absent, rejected a sale which seemed desirable on the existing market amounting to $350,000. A subsequent marked rise in the popcorn market resulted in a very substantial gain to the partnership as the result of this order. They made sales in very large amounts. The partners together passed *72 on what credit was to be extended and they all gave a personal guarantee on all partnership indebtedness to their bank. A divergence of opinion occurred between the men and women as to the size of a plant addition and on the insistence of the women a much smaller addition was made. In 1940 Mrs. Fischer, on her father's farm, had conducted some experiments in the replanting of hybrid corn and had discovered that one crop in addition to the crop from the original seed could be produced of a quality equal to the first crop and of a quantity almost equal. In 1943 when hybrid corn had become very scarce and there was a very large demand, the partnership could procure but a small amount of seed. Under Mrs. Fischer's supervision this seed was planted to produce a crop of 80,000 pounds which was not sold but replanted and a second crop of approximately 9,000,000 pounds was obtained by the partnership to sell on a very profitable market. Mrs. Erne spent from six to eight weeks per year making inspections, working from seven a.m. to eight p.m. in the field, dressed in overalls and walking long distances up and down corn rows. She would start in one corner of a corn field and her husband *73 at the other and at the end of the day they would compare notes in order to prophesy the crop. In the fall she supervised the taking in of corn delivered by the farmers and worked from seven to eight hours a day. She computed the amount due and paid the farmers upon receipt. Fischer was absent from the plant approximately six months during the taxable years, two months traveling, two months because of hay fever, one month at Hot Springs and one month visiting relatives in California. Erne during the taxable year was also absent about half of the time, two months on business, one month at Hot Springs and three months on vacation. Mrs. Erne, during these absences, was at the plant daily and Mrs. Fischer was present almost every day. When the men were at the plant the two women would come to the office but from two to four times a week. On a few occasions Mrs. Fischer was the only partner at the plant and she conducted the entire business by herself. In general she made decisions after consulting with Mrs. Erne in the absence of the men partners. Both Mrs. Fischer and Mrs. Erne substantially contributed to the control and management of the business of the partnership and rendered vital *74 services thereto. The shares of stock in the corporation given by Erne and Fischer to their respective wives were bona fide gifts and the capital gain resulting therefrom was income taxable to Mrs. Erne and Mrs. Fischer, respectively. Opinion In view of our findings of fact above set forth, a prolonged discussion of the law in this case would not seem to be required. The decision of the Supreme Court of the United States in Commissioner v. Tower, 327 U.S. 280, supplies a sufficient guide for our determination. In that case the Court laid down the common sense proposition that family partnerships, as other partnerships, are to be determined by the bona fides of the persons making up the partnership. That bona fides, of course, will be demonstrated by the capacity of the parties to perform a valuable function in the partnership due to their age, experience and background; by their contribution of capital or effort to the partnership after the partnership is formed; and by all other surrounding circumstances. In its opinion the Court said: "There can be no question that a wife and husband may, under certain circumstances, become partners for tax as for other purposes. *75 If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things, she may be a partner as contemplated by 26 U.S.C. § 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws." From the above it is seen that the contribution of capital originating with the partner, the participation in the control and management of the business, or the rendition of vital additional services may or may not be determinative of the sincerity of the partners in forming the partnership, but if all of these factors are absent from the partnership, that absence may well be considered by the court as establishing the fact that the partnership is a subterfuge. In this case the wives of the two former partners were each skilled *76 in their individual way to perform valuable functions for the newly formed partnership. The Commissioner says that these functions were not "additional" to the functions performed before the partnership was formed. We cannot agree with the Commissioner on this point but if it were so, it would not be determinative of our question in this case. Actually, prior to the partnership, the services that the wives performed were primarily directed to helping their husbands rather than to the promotion of the business of the partnership as a whole. After the partnership was formed the wives did everything they had done before but in a more intensive way and constant manner. In fact the growth of the popcorn business at that particular time necessitated far more work than either of the wives had done prior thereto. It was this growth of business which began in 1937, but accelerated greatly in 1940, that made a division of the business activities between the partners and their wives a practical necessity. This growth required the men to be away from their business at long periods of time. The information obtained in the inspection of farms under contract was of a highly confidential nature *77 which could not be entrusted to ordinary employees because such information would have been valuable in the hands of competitors. The growing business necessitated an increased number of inspections. The effect of the increase in business on men of advancing years required grater attention to health and the services of the wives while their husbands were away for this purpose was increasingly important. In fact, to summarize all the facts in this case, the record is conclusive that this partnership was entered into sincerely and for a bona fide business purpose and that the new partners fully carried out their partnership obligations. The second contention of the Commissioner that the capital gain from the liquidation of the corporation should all be taxed as income to Erne and Fischer would seem to be fully resolved by the decision on the validity of the subsequent partnership. The same contention was raised by the Commissioner before this Court in Howard B. Lawton, 6 T.C. 1093, and in that case, on facts very similar to those at bar, this Court held that the capital gain on the distribution of stock in a corporation by Howard B. Lawton to members of his family prior *78 to the dissolution of the corporation and the formation of a partnership, was taxable to Howard B. Lawton. The Court of Appeals, however, in an opinion reported at 164 Fed. (2d) 380, reversed this opinion and held that the capital gain was income to the donees of the stock and taxable to them. Following that opinion, it is our conclusion that the gain on the stock of Ila Maurine Fischer and Lois A. Erne resulting from the liquidation of Popcorn Growers & Distributors, Inc., is taxable to the owners of the stock at the time of the liquidation. In view of the stipulation concerning the inventories of the partnership for the taxable years ended September 30, 1941, and September 30, 1942, which requires a computation of that income, Decision will be entered under Rule 50. Footnotes
*. Includes freight.↩