OPINION. LeMure, Judge: The first question we must determine is whether respondent erred in his determination that the petitioners received assets having a fair market value of $42,143 upon the liquidation of Charles C. Cullen & Co., a corporation in which the petitioners were the sole stockholders. The petitioners contend that the payment of an amount in excess of the book value of the stock does not establish a fair market value for the assets of the corporation because the tangible assets had no value in excess of their book value and the corporation had no intangible assets of value. Respondent accepts the book value of the tangible assets as the fair market value of those assets, but argues that the amount which petitioners paid in excess of the book value of the tangible assets for the stock was paid for the intangible assets of the corporation and is the best measure of their fair market value. To support their argument that the corporation had no intangible assets of value, the petitioners have produced evidence that the petitioner himself, for all practical purposes, was Charles C. Cullen & Co. He alone of the stockholders participated actively in the business. He brought with him into the corporation, and later procured, most of its customers. He alone represented the corporation in dealing with the orthopedists by whom most of the customers were referred. He hired, and in many cases trained, the employees. The petitioner had the assurance of most of his employees, none of whom were under contract with the corporation, that they would follow him if he left the corporation. We have no doubt that most, if not all, of the doctors who furnished the customers to the business would have “followed” him if he had left the corporation. The name and location of the corporation had no value other than for their connection with the petitioner himself. The personal ability, personality, and reputation of Charles C. Cullen as an individual did not belong to the corporation as intangible assets, since he had no contractual obligation to continue his connection with it. Cf. D. K. MacDonald, 3 T. C. 720; Howard B. Lawton, 6 T. C. 1093; reversed on other issues, 164 Fed. (2d) 380. Neither could the personal ability of the other employees of the corporation be considered assets of the corporation, since they were also free to leave the corporation at any time and no doubt would have done so had the petitioner asked them. ' We conclude that the’ petitioner did not acquire any intangible assets of the corporation in the form of good will or otherwise when he purchased all of the stock held by the other stockholders. The gain which the petitioners realized upon the 25 per cent of corporate stock originally issued to them is the amount by which the fair market value of 25 per cent of the tangible assets exceeded the original cost of the stock,[1] and the Commissioner erred in adding any intangible asset value. It does not follow, however, that the petitioner sustained a short term capital loss upon the stock in the amount he paid to the other stockholders in excess of the book value of their stock by merely going one step further and dissolving the corporation, taking the assets of the corporation at their book value in exchange for the stock. The petitioner knew the value of the corporation’s assets before he offered to buy the remaining stock. As the result of his conclusion that he would not continue his former relationship with the corporation, he considered both the possibility of buying a partner’s interest in a competing business and the possibility of buying out the other stockholders in the corporation. On the advice of his financial adviser and accountant he determined to follow the latter course, relying upon the savings in taxes, resulting-from dissolution of the corporation, and upon increasing his share in the earnings of the business to reimburse him for the cost of buying out the other stockholders. He agreed to buy the other stockholders’ stock at the book value of their stock, plus their usual share of the estimated earnings of the corporation for 1943, or to sell his stock to them at its book value. The petitioner’s purpose was not to buy their stock as such. It was to buy up the business and the right to operate it as his own without interference from the former majority stockholders and without obligation to continue paying to them what he regarded as more than their rightful share of the earnings of the business. If he failed to do that, the petitioner intended to get out of the business himself. This right to operate the business as sole proprietor was not an asset of the corporation. However, it was an important and valuable right to the petitioner. It motivated his entire action. I Petitioner’s purpose in buying the stock was to liquidate the corporation so that he could operate the business as a sole proprietorship. The several steps employed in carrying out that purpose must be regarded as a single transaction for tax purposes. Prairie Oil & Gas Co. v. Motter, 66 Fed. (2d) 309; Helvering v. Security Savings & Commercial Bank, 72 Fed. (2d) 874; Commissioner v. Ashland Oil & Refining Co., 99 Fed. (2d) 588; certiorari denied, 306 U. S. 661; Kimbell-Diamond Milling Co., 14 T. C. 74. The petitioner paid more than the book value or fair market value of the assets in order to purchase the stock without delay and without increasing the already present strain on the personal relations of the stockholders. After acquiring the stock and dissolving the corporation pursuant to his plan, he had neither more nor less than he had paid for. As to whether the petitioner could have bought the stock for less than he paid, we venture no opinion. We do conclude that he bad, after the liquidation of the corporation, everything he had paid for when he bought all of the corporation’s stock. He sustained no loss on the transaction. It follows that the respondent’s disallowance of the capital loss carry-over claimed by the petitioners under section 117 (e) (1), Internal Revenue Code,[2] for the years 1944 and 1945 was correct. Decisions will be entered wader Bule 50. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. ★ * * * * * * (c) Distributions in LiQuiDATiON.-Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed In partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * * SBC. 117. CAPITAL GAINS AND LOSSES. ******* (e) Capital Loss Carry-Over. — • (1) Method of computation. — If for any taxable year beginning after December 81, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year. Por purposes of this paragraph a net capital gain shall be computed without regard to such net capital loss or to any net capital losses arising in any such intervening taxable years.